UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LEX DIAS, an individual, and SHERRY DIAS, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> JP MORGAN CHASE, N.A., a national association; U.S. BANK, N.A., a national association, and Does 1-50, inclusive, <br><br> Defendants. | Case No.: 5:13-CV-05327-EJD <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** <br><br> **[Re: Docket No. 7]** |

Presently before the Court is JPMorgan Chase Bank, N.A. ("Chase") and U.S. Bank National Association's ("USBank") (collectively, "Defendants") Motion to Dismiss Lex Dias and Sherry Dias's (collectively, "Plaintiffs") Complaint. The Court found this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and previously vacated the hearing. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Having fully reviewed the parties' briefings, and for the following reasons, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion.

1

Case No.: 5:13-CV-05327-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

**I. BACKGROUND**

The following facts are taken from Plaintiffs' Complaint and regarded as true for the purposes of the Motion.

Plaintiffs are homeowners who bring this action as a result of Defendants' allegedly unlawful conduct concerning a residential mortgage loan for the property located at 8411 Wren Avenue, Gilroy, Santa Clara County, California 95020 ("the Property"). Docket No. 1, Compl. ¶ 2. Plaintiffs are individuals who, at all relevant times, live in and own the Property. Id. ¶ 3. Chase is a diversified financial marketing and/or corporation engaged primarily in residential mortgage banking and/or related business and at all relevant times, was the servicer of Plaintiffs' loan. Id. ¶ 4. USBank is a diversified financial marketing and/or corporation engaged primarily in residential mortgage banking and/or related business, the successor in interest to Plaintiffs' loan, and the current beneficiary under the Note. Id. ¶ 5.

Plaintiffs secured financing for the Property by executing a Promissory Note and Deed of Trust in favor of Washington Mutual, F.A. ("WaMu") on October 19, 2004. Chase purchased WaMu in 2008 and assumed WaMu's assets, including Plaintiffs' Note and Deed of Trust. The Deed of Trust contains a provision for attorneys' fees in enforcing the terms of the Deed of Trust in connection with borrower's default. Id. ¶ 9. Thereafter, the Note and Deed of Trust were subsequently transferred to U.S. Bank, N.A., while Chase remained the loan servicer. Id. ¶ 10.

Between October 2004 and January 2012, Plaintiffs fully performed under the contract by making a timely mortgage payment each month. Id. ¶ 11. In February of 2012, Plaintiffs were current in their loan payments when they went to their local Chase branch, specifically the Gilroy, CA branch, to request a loan modification. Id. ¶ 12. At that time, Plaintiffs were able to make their mortgage payment but were seeking a loan modification in order to obtain a more comfortable monthly mortgage payment. Id. At that time, Plaintiffs spoke with one of the Chase representatives regarding the possibility of a loan modification and were advised that they could not grant one because Plaintiffs were current on their payments. Id. Plaintiffs were also told that

in order to get a loan modification, they would have to stop making payments and submit an application. Id.

Between July 2012 and November 2012, Plaintiffs submitted complete loan modification applications with all requested documents, and each time, Chase rejected their applications because Chase claimed that it needed additional information. Id. ¶ 13. Plaintiffs were puzzled as to why, although their applications were complete, they were continuously rejected, but continued applying in reliance on their customer service representatives' representations. Id.

Plaintiffs were shocked when, on November 15, 2012, they received a Notice of Default and a Declaration of Compliance stating that Chase had tried to contact Plaintiffs, but were unable to reach them. Id. ¶ 14. This seemed to fly in the face of the circumstances as Plaintiffs knew them to be because, while Plaintiffs themselves had frequently contacted Chase for more than a year by this time, they had not received any contacts from Chase. Id.

Having received the Notice of Default, Plaintiffs were distressed by the possibility of losing their home, so they immediately called Chase to inquire about the Notice. Id. ¶ 15. At that time, Chase's representative, Pamela Bennett, assured Plaintiffs that there was no active sale date for Plaintiffs' property and advised them to continue waiting for approval of their loan modification. Id.

In December 2012, Plaintiffs were relieved when they received a letter from Chase confirming that there were no issues with Plaintiffs' loan modification. Id. ¶ 16. Chase approved Plaintiffs for a loan modification and instructed them to make three trial payments from February 2013 through April 2013. Id.

After Plaintiffs promptly and fully made each trial payment of $2,438.79, Chase sent Plaintiffs their final loan modification. Id. ¶ 17. In May 2013, Plaintiffs submitted their first payment under their loan modification. Id. ¶ 18. However, it was refused by Chase. Id. When Plaintiffs went to their local Chase branch to ask why their payment was refused, the representative refused to tell them why and also refused Plaintiffs' proffered payment. Id.

1  Plaintiffs again attempted to make a mortgage payment at the Gilroy branch in person in
2  June 2013. Id. ¶ 19. However, the Chase representative again said that Chase could not accept the
3  payment because Plaintiffs' house was going into foreclosure. Id. Plaintiffs requested additional
4  details on how they could save their home, but the Chase representatives refused to provide
5  Plaintiffs any information and, instead, instructed Plaintiffs to contact Chase's customer service
6  center. Id.

7  Plaintiffs then contacted Chase customer service. Id. ¶ 20. The Chase representative that
8  they spoke to told them to reapply for a loan modification. Id. Plaintiffs did not understand why
9  they would need to start over and submit a new application. Id. However, the Chase representative
10 told Plaintiffs that reapplying was the only way to save their home. Id. Thus, Plaintiffs submitted
11 another loan modification application in early June 2013. Id.

12 Chase recorded a Notice of Trustee's Sale ("NOTS") on June 6, 2013. Id. ¶ 21. From June
13 2013 until September 2013, Plaintiffs frequently contacted Chase to follow-up on their application,
14 but no Chase representative was ever able to give them any additional information regarding either
15 their application or their trustee sale date. Id. ¶ 22.

16 In August 2013, Chase told Plaintiffs to re-submit their documents, which Plaintiffs did. Id.
17 ¶ 23. However, Chase once again denied Plaintiffs' application, even though they had done
18 everything that Chase asked in the application. Id.

19 Plaintiffs made a final attempt to apply for a loan modification in September. Id. ¶ 24.
20 However, before completing their review of Plaintiffs' application, Chase recorded a Notice of
21 Trustee's Sale for October 23, 2013. Id.

22 **II. LEGAL STANDARD**

23 Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim in the
24 complaint with sufficient specificity to "give the defendant fair notice of what the . . . claim is and
25 the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)
26 (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be
27 dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).
28

4

Dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is "proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Shroyer v. New Cingular Wireless Servs., Inc., 606 F.3d 658, 664 (9th Cir. 2010) (quoting Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)). In considering whether the complaint is sufficient to state a claim, the court must accept as true all of the factual allegations contained in the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

### III. DISCUSSION

#### a. Claim 1: Breach of Contract

Defendants contend that Plaintiffs' breach of contract claim is inadequately pleaded because Plaintiffs do not adequately allege the existence of a contract or the essential terms of such a contract. Plaintiffs concede that the terms of the contract have not been sufficiently pleaded and request that the Court grant leave to amend. Docket No. 10, Pl.'s Opp. at 5.

The Court agrees that Plaintiffs do not sufficiently allege the terms of the contract and DISMISSES the claim with leave to amend. Plaintiffs are advised to attach a copy of the contract to their amended complaint, if possible.

#### b. Claim 2: Violations of Civil Code §§ 2923.6 and 2923.5

##### i. Section 2923.6

The recently enacted Homeowners' Bill of Rights ("HBOR") attempts to eliminate the practice, commonly known as dual tracking, whereby financial institutions continue to pursue foreclosure even while evaluating a borrower's loan modification application. Rockridge Trust v. Wells Fargo, N.A., 2013 WL 5428722 (N.D. Cal. Sept. 25, 2013). To that end, California Civil Code § 2923.6 provides:

(c) If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee,

5
Case No.: 5:13-CV-05327-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

beneficiary, or authorized agent shall not record a notice of default, notice of sale, or conduct a trustee's sale while the complete first lien loan modification application is pending . . . until . . . the mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period . . . has expired . . .

(g) In order to minimize the risk of borrowers submitting multiple applications for first lien loan modification for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013, or who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.

Plaintiffs allege that Chase recorded a NOTS for the Property on June 6, 2013 and another NOTS for the Property on October 23, 2013.  Plaintiffs also allege that they submitted a loan modification in early June 2013.  Plaintiffs contend that Chase's recording of each NOTS was in violation of § 2923.6(c) because the recordings were made while Plaintiffs' loan modification application was pending.  However, Plaintiffs also allege that they submitted completed loan modification applications between July 2012 and November 2012.  Thus, under § 2923.6(g), Chase, the alleged mortgage servicer, was not obligated to evaluate the June 2013 loan modification application because Plaintiffs had already been evaluated for a loan modification prior to January 1, 2013.

However, § 2923.6(g) creates an exception when "there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer."  Plaintiffs claim they can amend their pleadings to satisfy this circumstance.

Accordingly, Plaintiffs' § 2923.6 claim is DISMISSED with leave to amend.

### ii. Section 2923.5

California Civil Code § 2923.5(a)(1)(A) provides that "[a] mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default pursuant to Section 2924 until . . . [e]ither 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (e)." Paragraph (2) requires, inter alia, that a mortgage servicer "contact the borrower in person or by telephone in order to assess the assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Subdivision (e) provides the circumstances under which a mortgage servicer's "due diligence" can excuse a failure to contact the borrower.

Plaintiffs allege that Defendants caused to be recorded a notice of default regarding the Property on November 12, 2012 without satisfying either the initial contact requirements of paragraph (2) or the due diligence requirements of subdivision (e). Defendants contend, however, that Plaintiffs' own allegations establish that these requirements were met, or that they are rendered moot. Defendants reason that, because Plaintiffs allege that they submitted loan modification applications as early as June 2012 and that they were placed in a trial payment plan in January 2013, the limited requirement to "assess and explore" was either already satisfied or is rendered moot.

Defendants cite Mabry v. Super. Court, 185 Cal. App. 4th 208 (2010) for the proposition that the "assess and explore" requirements of § 2923.5 are limited; for example, the required assessment of the borrower's financial situation can be satisfied simply by asking the borrower why she cannot make her payments. Id. at 232. The same is true of the required "exploration" of options to avoid foreclosure; exploration is limited to merely telling the borrower the traditional ways that foreclosure can be avoided (e.g., deeds "in lieu," workouts, or short sales), as distinct from requiring the lender to engage in a process that would be functionally indistinguishable from taking a loan application in the first place. Id.

Section 2923.5 can be satisfied even when the borrower initiates contact with the servicer to discuss a loan modification at least 30 days prior to the recording of the notice of default. Brown

v. U.S. Bancorp, 2012 U.S. Dist. LEXIS 26226, at *19 (C.D. Cal. Feb. 27, 2012) ("Because plaintiffs admit that they discussed loan modifications with [servicer] well before the notice of default was recorded, their allegation that defendants failed to comply with § 2923.5 fails."); see also Davenport v. Litton Loan Servicing, LP, 725 F. Supp. 2d 862, 877 (N.D. Cal. 2010) (dismissing § 2923.5 claim because plaintiffs' allegation of loan modification talks negated a claim that § 2923.5 was violated).

Here, Plaintiffs allege that they received the notice of default on November 15, 2012. They also allege that they spoke to Chase representatives about a loan modification in Feburary of 2012, and that they submitted a number of loan modification applications between July 2012 and November 2012. And although Plaintiffs allege that they were current on their loan payments when they first began discussing loan modifications with Chase, and that they stopped making payments for the purpose of obtaining a loan modification, § 2923.5 does not require that the contact with the borrower happen at any particular time, so long as the notice of default is not filed until 30 days after initial contact or 30 days after satisfying due diligence. Because Plaintiffs initiated loan modification discussions with Chase more than 30 days before the notice of default was recorded, Defendants did not violate § 2923.5.

Accordingly, Plaintiffs' § 2923.5 claim is DISMISSED. Because leave to amend would be futile, dismissal is with prejudice. Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

**c. Claim 3: Breach of the Implied Covenant of Good Faith and Fair Dealing**

"The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 349 (2000). The covenant thus prevents a contracting party from taking an action that, although technically not a breach, frustrates the other party's right to the benefit of the contract. Love v. Fire Ins. Exchange, 221 Cal. App. 3d 1136, 1153 (1990). The covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific

terms of their agreement." Guz, 24 Cal. 4th at 349-50.  The elements of a claim for breach of the covenant of good faith and fair dealing are:

> (1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract required him to do or that he was excused from having to do; (3) all conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff.

Woods v. Google, Inc., 889 F. Supp. 2d 1182, 1194 (N.D. Cal. 2012) (citing Judicial Counsel of California Civil Jury Instructions § 325 (2011)).

Plaintiffs' claim concerns the promissory note and deed of trust described above, under which Plaintiffs promised to pay all principal and interest due under the note.  Plaintiffs allege that Defendants interfered with Plaintiffs' performance by inducing Plaintiffs to stop making payments.  Specifically, Plaintiffs allege that in February 2012, they were told by a Chase representative that they could not be granted a loan modification because they were current on their payments.  Despite being "ready, willing, and able" to make payments, Plaintiffs allege that they were told they would have to stop making payments and submit an application in order to get a loan modification.  Plaintiffs stopped making payments, and eventually the foreclosure process was initiated.

The parties brief a number of cases in which claims for breach of the implied covenant, with similar factual allegations, were analyzed under Rule 8: Franczak v. Suntrust Mortgage Inc., 2013 WL 843912 (N.D. Cal. Mar. 6, 2013), Harvey v. Bank of Am., N.A., 2013 WL 632088 (N.D. Cal. Feb. 20, 2013), Harris v. Wells Fargo Bank, N.A., 2013 U.S. Dist. LEXIS 61847 (N.D. Cal. Apr. 30, 2013), Pacini v. Nationstar Mortgage, LLC, 2013 WL 2924441 (N.D. Cal. June 13, 2013), and Bing Ting Ren v. Wells Fargo Bank, N.A., 2013 WL 2468368 (N.D. Cal. June 7, 2013).

Despite similar factual allegations, the claims for breach of the implied covenant in Bing Ting Ren, Franczak, and Pacini did not survive a motion to dismiss; the claims in Harvey and Harris did.  The cases are most clearly distinguishable in that Harvey and Harris, unlike the other

cases, featured plaintiffs who alleged that the defendants engaged in "conscious and deliberate" acts that frustrated the plaintiffs' rights to benefit from the contract. For an implied covenant claim to proceed, the allegations "must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1395 (1990).

In Harris, the defendant allegedly promised the plaintiff that she could withhold her monthly payments without incurring late fees. Similarly, in Harvey the defendant allegedly advised the plaintiff not to make payments in order to apply for a loan modification and allegedly promised the plaintiff that it would not report him late or foreclose on his property while his loan modification application was under review. In contrast, in Bing Ting Ren, Franczak, and Pacini, the defendants merely informed the plaintiffs that they would need to miss payments in order to qualify for a loan modification; the defendants did not encourage or instruct the plaintiffs to default on their loans.

Here, Defendants' alleged conduct falls short of the conduct found actionable in Harris and Harvey. Under the current allegations, Plaintiffs were not encouraged or instructed to default in their loan payments; they were merely informed of the reason why they did not qualify for a loan modification.

Accordingly, the claim for breach of the implied covenant of good faith and fair dealing is DISMISSED with leave to amend.

### d. Claim 4: Violation of Business and Professions Code § 17200 et seq.

#### i. Unlawful business practices

Plaintiffs' fourth claim is for violation of California's Unfair Competition Law ("UCL"), which prohibits "any unlawful, unfair or fraudulent" business practice. Cal. Bus. & Prof. Code §

10

Case No.: 5:13-CV-05327-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

17200. The statute "has a broad scope that allows for 'violations of other laws to be treated as unfair competition that is independently actionable' while also 'sweep[ing] within its scope acts and practices that specifically prescribed by any other law.'" Hauk v. JP Morgan Chase Bank USA, 552 F.3d 1114, 1122 (9th Cir. 2009) (quoting Kasky v. Nike, Inc., 27 Cal. 4th 939, 949 (2002)).

By proscribing "any unlawful" business practice, the UCL borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable. Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999). An unlawful business practice under the UCL is an act or practice, committed pursuant to business activity, that is at the same time forbidden by law. Progressive W. Ins. Co. v. Yolo Cnty. Super. Ct., 135 Cal. App. 4th 263, 287 (2005).

Because Plaintiffs do not adequately plead a violation of another law upon which to tether their UCL claim, they cannot adequately plead a violation of the "unlawful" prong of the UCL.

### ii. Fraudulent or unfair business practices

However, the UCL also prohibits "fraudulent" or "unfair" business practices. Plaintiffs allege that "Defendants' entire course of dealing with Plaintiffs was fraudulent and designed to unlawfully engineer an insurmountable default that would give Defendants the color of authority to foreclose on the Property."

It is fraudulent or unfair for a lender to proceed with foreclosure after informing a borrower he or she has been approved for a loan modification. Lueras v. BAC Home Loans Servicing, LP, 221 Cal. App. 4th 49, 85 (2013). Plaintiffs allege that they "received a letter from Chase confirming that there were no issues with Plaintiffs' loan modification . . . Chase actually approved Plaintiffs for a loan modification and instructed them to make three trial payments from February 2013 through April 2013." Plaintiffs allege that they made the three trial payments, but when they submitted their first payment under their loan modification in May 2013, the payment was "inexplicably refused" by Chase. Chase allegedly recorded a notice of trustee's sale on June 6, 2013. Therefore, Plaintiffs sufficiently allege a fraudulent or unfair business practice.

11
Case No.: 5:13-CV-05327-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

Private standing under the UCL is limited to "any person who has suffered injury in fact and has lost money or property' as a result of unfair competition." Cal. Bus. & Prof. Code § 17204. A party must (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim. Kwikset Corp. v. Super. Ct., 51 Cal. 4th 310, 322 (2011).

Plaintiffs allege that they suffered money damages, attorneys' fees, damage to their credit, and costs of suit as a result of the foreclosure initiated by Defendants. These alleged damages are sufficient to satisfy both the economic injury and causation requirements of the UCL.

Accordingly, Defendants' Motion is DENIED as to Claim 4, but only to the extent Claim 4 is based on the "fraudulent" prong of the UCL. So far as Claim 4 is based on the "unlawful" prong of the UCL, it is DISMISSED with leave to amend.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion to Dismiss. Claim 1 is dismissed with leave to amend. Claim 2 as to Cal. Civ. Code § 2923.6 is dismissed with leave to amend. Claim 2 as to Cal. Civ. Code § 2923.5 is dismissed with prejudice. Claim 3 is dismissed with leave to amend. Claim 4 as to the "unlawful" prong of the UCL is dismissed with leave to amend. Claim 4 as to the "fraudulent" prong of the UCL is adequately pleaded.

Plaintiffs are advised that they may not add new claims or parties without first obtaining Defendants' consent or leave of court pursuant to Federal Rule of Civil Procedure 15. Plaintiffs are further advised that failure to amend the complaint in a manner consistent with this order may result in the dismissal of this action.

**IT IS SO ORDERED**

Dated: June 25, 2014

_____
EDWARD J. DAVILA
United States District Judge

12
Case No.: 5:13-CV-05327-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS